■ JAMES P. CONNORS, JR., as Chairman of the Unlawful Practice of Law Committee, Westchester County Bar Association, Petitioner. RICHARD A. KATZ, Respondent.—Proceeding by the Chairman of the Unlawful Practice of Law Committee of the Westchester County Bar Association for an investigation and determination as to (1) whether a certain prepaid legal services plan implemented by Richard A. Katz, P. C., in connection with the members of the IBM Westchester Employees Federal Credit Union is subject to the approval of this court pursuant to subdivision 5 of section 495 of the Judiciary Law; (2) whether Richard A. Katz, P. C., or the said credit union, has engaged in conduct constituting the unlawful practice of law (see Judiciary Law, § 476-a); and (3) whether any disciplinary action against

Richard A. Katz is warranted. Petition granted to the extent that it is determined that the prepaid legal services plan in question is not within the purview of section 495 of the Judiciary Law; that the plan does not require the approval of this court; that neither Richard A. Katz, P. C., nor the IBM Westchester Employees Federal Credit Union has engaged in conduct constituting the unlawful practice of law; and that disciplinary action against Richard A. Katz is not warranted. Proceeding otherwise dismissed on the merits. Subdivision 1 of section 495 of the Judiciary Law provides, in part, that no corporation or voluntary association shall "(a) practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor * * * (d) furnish attorneys or counsel, nor (e) render legal services of any kind * * * nor (f) assume in any other manner to be entitled to practice law". Subdivision 5 thereof exempts from the operation of the statute organizations organized for benevolent or charitable purposes whose existence, organization or incorporation may be approved by the appropriate Appellate Division. By its decision in *Matter of Feinstein (Attorney-General of State of N. Y.)* (36 NY2d 199), the Court of Appeals has implicitly held that entities providing prepaid legal care plans are organizations having benevolent or charitable purposes within the meaning of subdivision 5 of section 495 of the Judiciary Law. Pursuant to the *Feinstein* decision, and in the light of the limited discretion given therein to the Appellate Divisions in passing upon such applications, this court has approved applications for the incorporation and existence of several open-panel, prepaid legal care plans, i.e., the Suffolk County Legal Services Corp., Prepaid Legal Services of Westchester County, Inc., and Professional Group Legal Services Association of Nassau County, and of several closed-panel plans designed to serve the needs of the members of particular groups, e.g., Gasoline Merchants, Inc., Group Legal Services Plan and Long Island Gasoline Retailers, Inc., Legal Plan. In a number of instances it was our position that certain proposed group legal services plans did not require the approval of this court pursuant to section 495, e.g., Westchester CSEA Chapter, Freeport Teachers Association, and Head Start Program of Nassau and Suffolk Counties. In those instances, the court was of the opinion that the corporation or voluntary association was not practicing law or furnishing attorneys or rendering legal services as prohibited by section 495, but that the plans essentially involved the rendition of legal services by a law firm directly to the individual members of the group. In our opinion, the instant plan falls into the latter category. Although the monthly contributions by the members who have chosen to participate are deducted from their payroll checks and paid to the credit union, which then transmits the funds to the Katz law firm, and although the credit union maintains a degree of involvement in the plan through its representation on the board of trustees of the plan, the agreement by which legal services are rendered is entered into directly between each member and the Katz firm, which functions independently of the credit union. Under the circumstances we do not find that the plan runs afoul of the prohibitions of section 495. It may be noted that, in contrast, the union legal services plan involved in the *Feinstein* case involved the establishment by the union of a prepaid legal services section which employed the attorneys who rendered the services and which was funded by the welfare fund of the union. We do not at this time pass upon the question, compounded in this case by the fact that a Federal credit union rather than a labor union is involved, as to whether the Federal Retirement Income Security Act of 1974 (US Code, tit 29, ch 18) pre-empts the regulation of a plan of this type by the Appellate Division (see *Matter of Feinstein*

*[Attorney-General of State of N. Y.]*, 36 NY2d 199, 206, *supra).* Finally, we echo the sentiments of the Court of Appeals and the Appellate Division, First Department, as expressed in the *Feinstein* case (45 AD2d 440), in calling for legislative attention to the problem of the regulation of group legal services plans. Gulotta, P. J., Hopkins, Martuscello, Cohalan and Margett, JJ., concur.